# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4594-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

R.C.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF R.A.C.
and L.R.C.,

     Minors.

_____

Submitted June 2, 2020 – Decided June 26, 2020

Before Judges Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FG-11-0030-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Louis W. Skinner, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Julie B. Colonna, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Lynn B. Norcia, Designated Counsel, on the brief).

PER CURIAM

Defendant R.C. appeals from the June 6, 2019 judgment of guardianship terminating his parental rights to his minor children, R.A.C. (Ryder) and L.R.C. (Lillian).[1]  We affirm, substantially for the reasons stated by Judge Wayne Forrest in his comprehensive written opinion.  We add these comments.

I

We summarize the most significant facts from the detailed review of the evidence in Judge Forrest's opinion.  In addition to Ryder and Lillian, defendant has two other children, I.C. (Irene) and J.C. (Justin); at the time of the instant

---

[1]  We use initials and pseudonyms to protect the family's privacy.  R. 1:38-3(d)(12).  On January 15, 2019, R.O. (Robin), the children's biological mother, executed an identified surrender of her parental rights to their maternal aunt and uncle.

guardianship trial, both Irene and Justin were in the sole custody of J.T. (Jessica), their biological mother. Although Irene and Justin are not subject to this appeal, defendant's relationship with them resulted in the initial involvement of the Division of Child Protection and Permanency (the Division), after several domestic violence incidents between defendant and Jessica.

In October 2014, the Division first received a referral regarding Ryder and Lillian, after defendant and Robin were involved in a physical altercation in the presence of Ryder. Defendant put Robin in a "bear hug" after she punched him several times. The incident resulted in Robin obtaining a temporary restraining order (TRO); however, she dropped it two days later. A few days later, while pregnant with Lillian, Robin was admitted for psychiatric treatment related to depression and the hospital made a referral to the Division concerning her mental health and fitness.

Defendant cared for Ryder throughout Robin's admission. At the time, he lived with his parents and was unemployed. He also informed the Division that he is prescribed and smokes medical marijuana for his ulcerative colitis. Defendant maintains he does not smoke marijuana in the presence of his children. Defendant also admitted to having the physical altercation with Robin

3

earlier that month. The Division completed a home assessment for defendant's parents' home and no issues were noted.

Between November 2014 and March 2016, the Division received additional referrals involving domestic violence in the presence of children. Robin also obtained and dropped a second TRO. On March 2, 2016, following a referral received from the children's day care, the Division initiated an emergency removal of the children and placed them in a licensed resource home.

On March 4, 2016, the Division filed a verified complaint and received custody, care and supervision of the children. The Division requested defendant provide the names of any relatives who could be assessed for placement of the children; he provided none. The court ordered defendant to participate in a risk assessment and batterer's program and anger management. At that time, the TRO remained in place and restrained defendant's ability to see the children.

The Division then placed Ryder and Lillian with their maternal grandparents. In response, a Division caseworker testified that defendant threatened to blow up their home. Ryder and Lillian were eventually placed with their maternal aunt and uncle, after the maternal grandparents informed the Division they no longer wanted to care for the children because of their concerns regarding defendant.

A-4594-18T4

Before the guardianship trial, the Division provided defendant with individual counseling, domestic violence and substance abuse treatment, a ten-week strengthening families program, a psychological and parenting capacity evaluation and supervised visitation with the children. Although defendant had many positive supervised visits with the children, he became "more erratic and unpredictable" as the guardianship proceedings progressed, often threatening and berating Division caseworkers. During one visit, defendant took a photograph and video of Ryder on the toilet because he claimed the resource parents pinched and hit the child. He posted the video on Facebook proclaiming the incident "will become a national matter."

At the time of trial, defendant remained unemployed, had no permanent housing, and had no realistic plan for reunification with his children. A Division expert in the field of psychology, Dr. Barry Katz, testified that Ryder and Lillian displayed signs of complex trauma because of their exposure to extreme parental conflict, early instability, inappropriate expressions of anger, and inappropriate behavior on the part of their parents. He concluded that the children experienced a "trauma bond" in the presence of defendant. Dr. Katz opined that the resource parents are the children's psychological parents and primary nurturing figures. He concluded the removal of the children from the resource parents would be

5

"horribly traumatic and would have compounding effects, not only in the short term but in the long term as well." Dr. Katz recommended there be no continued contact between defendant and the children.

Another Division expert in the field of psychology, Dr. Meryl Udell, testified that despite completing court ordered services, defendant failed to attain improved parenting skills and anger management. Dr. Udell noted defendant's constant blaming of others and the minimization of his own problems. She concluded there was nothing defendant could do to change his personality structure in order to successfully parent his children. Dr. Udell diagnosed defendant with narcissistic personality disorder, antisocial traits, and impulse control disorder.

The Division also produced Kevin Enright, Ph.D. as a fact witness. Dr. Enright treated defendant for approximately two years, between 2016 and 2018, as a Division-contracted provider. Dr. Enright confirmed he never recommended defendant visit his children unsupervised. Dr. Enright expressed concerns about defendant's sexual judgment, noting: defendant admitted to showering with his daughters at a young age; allowing Lillian to change in a men's locker room, contrary to a court order; refusing to wear underwear

underneath his kickboxing outfit; and the video of Ryder which he posted on the internet.

Defendant presented Dr. Gerald A. Figurelli as an expert in the field of psychology. Dr. Figurelli, testified that although defendant was not experiencing "a diagnosable psychiatric illness that requires formal mental health treatment," his personality test results "reflect his history of problems with control over the expression of his anger and aggression; his history of substance abusing behavior and his history of offending behavior." Dr. Figurelli opined defendant was not fit to parent his children at the time of trial, but could become fit if provided additional services, distinguishing between "capacity to parent" and "being in a position to parent."

However, Dr. Figurelli conceded there was no certainty that defendant would benefit from additional services. Furthermore, he testified that if defendant failed to demonstrate progress after receiving additional services in a three- to six-month timeframe, "the children's permanency needs at that point would not be served by waiting any longer for [defendant] to be able to achieve that level of parenting." On cross-examination, Dr. Figurelli acknowledged that three to six months had already elapsed since his evaluation. He further acknowledged the children would experience the impact of the loss of their

relationship with the resource parents, with whom they were "thriving," if separated from them.

In a detailed, 109-page opinion issued on the same day as the judgment of guardianship, Judge Forrest concluded that the Division satisfied all four prongs of the best interests of the child test, N.J.S.A. 30:4C-15.1a. The judge found Dr. Katz, Dr. Udell and Dr. Figurelli to all be credible expert witnesses. Regarding defendant's testimony, the judge noted he appeared "to lack a fundamental understanding regarding the inappropriateness of his behavior in situations as documented by [t]he Division, and the need for permanency for his two children."

Judge Forrest found the Division proved the children's safety, health and development had been, and would continue to be endangered by a parental relationship with defendant. In this regard, the judge noted defendant's inappropriate actions during visits, his failure to benefit from services provided by the Division, and his inability to accept responsibility for his past actions, especially those related to domestic violence and criminal behavior. The judge further explained,

> Throughout the litigation, [defendant] has been unable to obtain and maintain stable and appropriate housing and stable employment. While [defendant] completed all of his court ordered services, he has not been able to benefit from

those services. [Defendant]'s behavior with his children and the Division declined as the litigation went on, and has not seen any improvement. Additionally, [defendant] has been unable to take responsibility for his own actions which led to his domestic violence and criminal history and history with the [D]ivision. Therefore, [defendant] is unable and unwilling to eliminate the harm facing [Ryder] and [Lillian], provide a safe and stable home for [Ryder] and [Lillian] and further delay in permanency will add to [the harm].

He also noted the children had "been in placement since March 2, 2016 and deserve permanency, which can be achieved with their current relative caretakers."

Judge Forrest found the Division extended numerous resources to defendant, but that he failed to take advantage of those services and continued "his pattern of severe narcissism, intimidation, control and risk for emotional abuse and neglect of his children." The judge found the Division proved by clear and convincing evidence that the termination of parental rights would not do more harm than good.

II

On appeal, defendant contends that the Division failed to prove all four prongs of the best interests test. He presents the following points of argument:

> I.  THE LOWER COURT ERRED IN ITS CONCLUSION THAT TERMINATION OF PARENTAL RIGHTS IS IN THE BEST

INTERESTS OF THE CHILDREN UNDER N.J.S.A. 30:4C-15.1a.

A. THE COURT BELOW ERRED IN CONCLUDING THAT [RYDER] AND [LILLIAN] WERE HARMED BY [DEFENDANT].

B. THE COURT BELOW ERRED IN CONCLUDING THAT [DEFENDANT] IS UNWILLING OR UNABLE TO ELIMINATE THE ALLEGED HARM TO DEFENDANT AND [LILLIAN] OR TO PROVIDE A SAFE AND STABLE HOME.

C. THE COURT BELOW ERRED IN CONCLUDING THAT [THE DIVISION] EXERCISED REASONABLE EFFORTS TO PROVIDE SERVICES TO HELP [DEFENDANT] CORRECT THE CIRCUMSTANCES THAT LED TO THE CHILDREN'S PLACEMENT OUTSIDE THE HOME.

D. THE COURT'S CONCLUSION THAT TERMINATION OF PARENTAL RIGHTS WILL NOT DO MORE HARM THAN GOOD IS ERRONEOUS.

Parents have a constitutionally protected right to enjoy a relationship with and to raise their children. N.J. Div. of Youth and Family Servs. v. G.L., 191 N.J. 596, 605 (2007). "[T]erminations should be granted sparingly and with

A-4594-18T4

great caution because they irretrievably impair imperative constitutionally-protected liberty interests and scores of centuries of societal family constructs." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014). However, a parent's rights are not absolute. Ibid. "Because of its parens patriae responsibility, the State may terminate parental rights if the child is at risk of serious physical or emotional harm or when necessary to protect the child's best interests." Id. at 553-54.

In order for the State to terminate parental rights, it must satisfy the following prongs of the "best interests of the child" test by clear and convincing evidence:

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

> (4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1a.]

The four prongs "are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests," with parental fitness being the critical issue. In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999). The considerations involved are fact-sensitive and require particularized evidence that address the specific circumstances present in each case. Ibid.

Our review of Judge Forrest's decision is limited. See N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 278-79 (2007). We will not disturb a trial judge's factual findings so long as they are supported by substantial credible evidence. R.G., 217 N.J. at 552. We defer to the judge's evaluation of witness credibility, and to his expertise in family court matters. Id. at 552-53; Cesare v. Cesare, 154 N.J. 394, 411-13 (1998).

Having reviewed the record in light of those legal standards, we find that Judge Forrest's factual findings are supported by substantial credible evidence, and he reached correct legal conclusions based on those findings. Defendant's

contentions on appeal are not supported by the record and are without sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

We add these final comments.  As Judge Forrest found, defendant remains unable to secure employment and permanent housing due to his aggressive nature and inability to work with others; he continues to be incapable of caring for himself, much less for Ryder and Lillian.  This was evidenced by his constant outbursts and inappropriate behavior during his supervised visitation and psychological evaluations.  The record supports Judge Forrest's determination that Ryder and Lilian have bonded with their maternal aunt and uncle, who wish to adopt them, and the children would suffer severe harm if removed from their care.  The termination of defendant's parental rights is in the children's best interests, as their need for a permanent, stable home is paramount.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4594-18T4